## J. F. LOEW v. C. S. AUSTIN.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

Argued January 26, 1891—Decided February 16, 1891.

1. Where a yacht, belonging to a social club, is specifically pledged to one of the members, as security for a loan advanced to pay the purchase money thereof, and continues so pledged, on a sale of it by the treasurer of the club he must account to the pledgee for the sum received.
2. That the treasurer, out of the money received by him on the sale of the yacht, paid bills of the club and for supplies to the yacht, is no defence, and the amount thereof cannot be allowed to him as a set-off against the claim of the plaintiff.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 393 January Term 1891, Sup. Ct.; court below, No. 812 December Term 1887, C. P. No. 2.

On February 3, 1888, John F. Loew brought assumpsit against Charles S. Austin. Issue.

At the trial on January 21, 1890, the plaintiff, under objec-

Statement of Facts.

tion and exception to the defendant,[1] put in evidence the following note:

$400. PHILADELPHIA, July 23, 1882.

Six months after date we promise to pay to the order of John F. Loew, Esq., four hundred dollars, with the sloop-yacht Coquette as collateral, without defalcation for value received.

CHAS. S. AUSTIN YACHT CLUB,
per Chas. S. Austin, Treasurer.

[Indorsed.] CHAS. S. AUSTIN.

The plaintiff then testified as follows: "This transaction arose in this manner. It was when we first met in the club. The club talked of buying a yacht in Boston, but did not have the money. I told them that if I was properly secured, I would loan them the money. They agreed to do it. They drew up a note similar to this, with the yacht as collateral security, and Mr. Austin and Mr. Vanderslice, another member of the club, agreed to indorse the note and become personally responsible for the payment of the debt, in case the yacht was destroyed or lost. This was in the early part of 1876. I think in May. [Notes previously given, called for, and shown witness.] Those are notes given before the one in evidence. As they became due they would be renewed. The interest was paid, from time to time, and on some of them no interest was paid. Mr. Vanderslice was one of the original members; he went out in 1880. He refused to be on the note any longer. Mr. Austin then said he would be alone responsible along with the yacht. He said he would be responsible in case the yacht was lost. $200 was paid on account and the note was renewed for $400, until I got the present note. I spoke to Mr Austin about the note and he said he would not renew it. It was then protested. I spoke to him several times, but he would not recognize me. On December 14, 1887, I asked him what had become of the yacht. He said he had sold it to a man by the name of Perrine, at Barnegat, for $575. I said: 'We had better have a settlement.' He said: 'If you think there is any money owing to you, sue me.' His wife came along, and he went away. I saw him several times after that; he said, 'If you think you are entitled to anything sue me for it.'"

Cross-examined: "There were more than twenty members in the club. It was first called the Charles Abel Yacht Club;

afterwards called the Charles S. Austin Yacht Club. It was unincorporated. Each member had a share. I was president of the club. We all had an equal interest in the property of the club outside of my money. The ground I loaned the money on, was upon being properly secured by the note and yacht. From 1876 to 1882, the note was renewed from time to time by order of the club, and interest paid. In case the yacht was lost, Mr. Austin was to be responsible. The only writing was the note itself. I don't know when the yacht was sold. I heard of it on December 14, 1887. There was a committee appointed to get bids for the sale of the yacht. I presided at the meeting when this committee was directed to get bids. I don't remember any meeting when Mr. Austin was directed to sell the boat, when I presided. I don't know that I made any claim at that meeting that the money was to come to me. Mr. Austin was treasurer of the club. The club had no other property than this."

Other members of the club testified to the same effect.

In rebuttal, the defendant, called in his own behalf, testified that the last meeting of the club was held April 4, 1882, when the plaintiff was present and presided; that the treasurer, the witness, was authorized to advertise the yacht for sale; that, having advertised but receiving no bids, he sold the yacht in November, 1883, for $575, and out of the money he paid $50 for having the yacht pumped and towed to the place of sale, as well as other bills due to himself and ordered to be paid by the club, to more than the amount received by him for the yacht. The receipted bills being offered in evidence, objection was made, and the offer refused; exception.[2]

The case being closed on the testimony, the court, HARE, P. J., charged the jury as follows:

[If you find that the yacht was specifically pledged and continued so, and was sold by the defendant for more than enough to pay plaintiff, the defendant must account to the plaintiff for the sum so received. The claim that the defendant has, out of the price received, paid bills of the club, and for supplies to the yacht, is no defence, and cannot be allowed as a set-off.] [3]

Defendant requests the court to charge the jury as follows:

2. The uncontradicted fact that the defendant paid bills of

Arguments.

the club, and claims for the maintenance of the yacht, from the price received for her sale, to the full amount of said price, is a proper defence, and your verdict should be for the defendant.

Answer: Refused.[4]

3. The fact being undisputed that this transaction, the sale of the boat and payment of bills, occurred between partners and in the partnership business, is a proper defence, and your verdict should be for the defendant.

Answer: Refused.[5]

4. Under the law and the evidence, the verdict should be for the defendant.

Answer: Refused.[6]

—The jury returned a verdict for the plaintiff for $569.76. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error:

1. The admission of the plaintiff's offer.[1]

2. The refusal of the defendant's offer.[2]

3. The portion of the charge in [ ][3]

4–6. The answers to the defendant's points.[4 to 6]

*Mr. J. Howard Morrison* (with him *Mr. James M. West*), for the appellant.

Counsel cited: (1) Schafer v. Bank, 59 Pa. 144; Temple v. Baker, 125 Pa. 634; (2, 3, 4) Story on Bailments, 306 a.; Pickersgill v. Brown, 7 La. Ann. 298–313. (5) Hall v. Logan, 34 Pa. 331; Leidy v. Messinger, 71 Pa. 177; Crow v. Green, 111 Pa. 637. (6) Wolcott v. Keith, 22 N. H. 196; Eastman v. Avery, 23 Me. 248; Lucketts v. Townsend, 3 Tex. 119 (49 Am. Dec. 730); Smyth v. Craig, 3 W. & S. 14–19; Collins's App., 107 Pa. 590; Wallace's App., 104 Pa. 559; Collins v. Buck, 63 Me. 459; Holmes v. Crane, 2 Pick. 610; Kimball v. Hildreth, 8 Allen 168; Day v. Swift, 48 Me. 368.

*Mr. A. Lewis Smith*, for the appellee, was not heard.

The brief filed, cited: (1) Lindley on Partnership, 50; Eichbaum v. Irons, 6 W. & S. 67; Ash v. Guie, 97 Pa. 493. (2) McIntire's App., 118 Pa. 421; Shamburg v. Abbott, 112 Pa. 6; Clarke's App., 107 Pa. 436; Kahle v. Sneed, 59 Pa. 388; Corbett v. Lewis, 53 Pa. 332; Bartley v. Williams, 66 Pa. 329; Gibson v. Moore, 6 N. H. 547; Bissell on Partnership, *120–130.

Statement of Facts.

PER CURIAM:

The learned judge below instructed the jury that, "If you find that the yacht was specifically pledged, and continued so, and was sold by the defendant for more than enough to pay the plaintiff, the defendant must account to the plaintiff for the sum so received. The claim that the defendant has, out of the price received, paid bills of the club, and for supplies to the yacht, is no defence, and cannot be allowed as a set-off." This charge was entirely accurate, and, as the jury have found in favor of the plaintiff all the facts referred to in the charge, there is no more to be said.

Judgment affirmed.